NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HELENE ALLEN,<br><br>                    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | Civil Action No.: 10-cv-2614 (JLL)<br><br>**OPINION** |

**LINARES,** District Judge.

Presently before the Court is Plaintiff Helene Allen's Appeal in which she seeks review of a final decision by Administrative Law Judge ("ALJ") John M. Farley denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB") before August 13, 2006. This Court has considered submissions made in support of and in opposition of this appeal. No oral argument has been made to this Court pursuant to Federal Rule of Civil Procedure 78. Plaintiff seeks that this Court either reverse Defendant's decision denying Plaintiff's application and declare Plaintiff is entitled to disability beginning March 11, 2004, or remand the case to Defendant for a new hearing in accordance with the Social Security Act. For the reasons set forth below, this Court finds the ALJ erred in not properly explaining his opinion or developing the record at steps three and four. This Court vacates the ALJ's decision and remands the case to the ALJ to fully develop the record and explain his findings.

## I.    PROCEDURAL HISTORY

Plaintiff first filed for DIB and SSI on August 12, 2004. Plaintiff alleged disability due to

severe orthopedic, neurological, asthmatic, and psychiatric conditions beginning March 11, 2004. ALJ Marilyn M. Faukner initially denied the claim, finding Claimant capable of light work, but on August 24, 2006 the Appeals Council remanded the denial finding the ALJ's evaluation and discussion inadequate.  The Appeals Counsel requested that upon remand, the ALJ: obtain additional evidence concerning the claimant's impairments in order to complete the administrative record; give further consideration to the claimant's maximum residual functioning capacity ("RFC") and provide evidence of record in support of the assessed limitations; and if warranted by expansion of the record, obtain evidence from a vocational expert.

A hearing was held before ALJ John M. Farley on October 23, 2007.[1]  On December 14, 2007, after considering the matter de novo, ALJ John M. Farley issued a partially favorable decision.  The ALJ found Plaintiff disabled as of August 13, 2006, when Plaintiff's age category changed to an individual closely approaching advanced age, but not before.  Before August 13, 2006, ALJ Farley found Claimant capable of sedentary work.  The Appeals Council affirmed that decision.  Plaintiff now appeals the partially favorable decision in this Court.

## II.    STATEMENT OF FACTS

Claimant, Helen Allen, has a high school education.  R. at 1, 21.  Claimant was forty-seven years old at the time of the alleged onset date of disability.  R. at 20.  The claimant turned fifty on August 13, 2006.  Claimant worked as a nurses' aid for fifteen years, which sometimes involved heavy lifting.  R. at 1, 20.  At the time of the hearing, Claimant was living with her

---

[1]The record was updated with: an updates earnings record (Exhibits 1D-4D); new notices (Exhibits 1B-15B); Claimant's welfare statement (Exhibit 14E); a list of Claimant's medications (Exhibit 13E); a printout from Penny Drugs (Exhibit 12E); and a report from Dr. Bipin Parikh (Exhibit 21F).  R. at 492.

second oldest daughter and her son.  R. at 406.  The claimed disability onset is March 11, 2004.

R. at 16.  Claimant is currently receiving Welfare, and has received Workman Compensation

benefits for approximately two years.  R. at 18.

Claimant sustained a work related injury to her back while working as a nurses' aid on

March 11, 2004.  R. at 18, 438.  Plaintiff was transferring a patient and felt a sudden onset of

severe back pain, and was not able to complete work that day.  R. at 200.  Claimant was seen at

the Christ Hospital Emergency Room where she was provided with medication and discharged.

R. at 200, 332.  Plaintiff attempted to return to work after three days but was unable to do so

because of severe pain.  R. at 200.

The claimant started treatment with Dr. Rafael S. Paz on March 18, 2004, at Concentra

Medical Center.  R. at 153.  Dr. Paz diagnosed Claimant with a lumbar strain and recommended

Claimant return to work restricting lifting, pushing, and pulling to no more than 20 pounds.  R. at

153.  Dr. Paz also recommended physical therapy and gave the claimant Ibuprofen and

Cyclobenzaprine.  R. at 153.  Dr. Paz noted that the claimant had been taking her medications

and did not see any improvement from either the medications or the physical therapy.  R. at 147.

Dr. Paz also described the pain in Claimant's lower right back as constant and moderate, but not

radiating.  R. at 147.  Claimant's symptoms were exaggerated by bending, lifting, and carrying.

R. at 147.  Dr. Paz found a normal gait, with tenderness of the right paraspinous muscles and the

lumbosacral spine, as well as a decreased range of motion.  R. at 147.  Dr. Paz also noted that

flexion was 45 degrees with pain and extension at 5 degrees and a negative bilateral leg raise.  R.

at 147.  Radial, femoral, and pedal pulses were present and symmetrical, there was no edema,

and sensory was intact to light touching distally.  R. at 192, 196.  Dr. Paz's opinions were

unchanged through April 15, 2004, when he then referred the claimant to Dr. Jonathan Lester for further evaluation. R. at 147-66.

Dr. Lester saw the claimant on April 28, 2004, who also diagnosed Claimant with a lumbar strain. R at 171. Dr. Lester first advised that the claimant return to work with no repetitive lifting over 25 pounds, and then decreased the weight limit to 15 pounds on May 5, 2004. R. at 173. Dr. Lester indicated that the claimant had some right sided back pain associated with disc protrusion, but no found evidence of radiculopathy, and indicated that there was a significant degree of overlay. R. at 201. Dr. Lester felt the claimant would be a candidate for epidural steroid injection, and referred Claimant to Dr. Ramnanan. R. at 201.

Dr. Ramnanan saw the claimant on May 14, 2004, and performed a right transforaminal selective epidural injection at L4 and L5 under fluroscopic control. R. at 189, 201. Dr. Ramnanan noted that the claimant was sitting with discomfort and ambulated with a non-atalgic gait. R. at 278. Dr. Ramnanan stated that flexation at the lumbosacral spine was 45 degrees, with hyperextension to 15 degrees, and significant lower back pain. R. at 278. Further, he noted that left and right lateral bending caused significant lower back pain, and that a mild palpation of the lower back also elicited severe pain. R. at 278. Straight leg raising in the sitting position was negative, motor examination was grade 4+/5 in the right extensor hallucis longus, and right plantar flexon was most likely secondary to pain. R. at 278. Dr. Ramnanan stated that there were no sensory deficits to pin prick. R. at 278.

On June 2, 2004, Dr. Lester again saw the claimant after the epidural injection, and indicated that the claimant responded poorly to the procedure. R. at 201, 186. Dr. Lester increased the amount of weight that could be lifted to 20 pounds and suggested the claimant

partake in physical therapy for two weeks beginning on June 4, 2004. R. at 174. Nonetheless, Dr. Lester's notes demonstrate that the claimant did not have success with the therapy. R. at 186. Dr. Lester again increased the weight to 40 pounds on June 30, 2004. R. at 176. On July 21, 2004, Dr. Lester determined the claimant could return to regular duty but with a permanent 10 pound weight restriction. R. at 177. Dr. Lester indicated that the claimant would not be a good surgical candidate. R. at 186. Dr. Lester also reported that the claimant did poorly on the Functional Capacity Evaluation, which is consistent with a high degree of symptom embellishment and/or magnification. R. at 181, 186. Dr. Lester recommended the claimant return to sedentary work with a lifting restriction of 10 pounds, based on Claimant's failure to lift 15 pounds, and was the opinion that she would not benefit from additional treatment. R. at 186. Dr. Lester finally released Claimant from his active care on August 4, 2004, when the claimant was complaining of back pain that was radiating throughout the entire right leg when standing or going up and down stairs. R. at 179, 201.

Dr. Paul A. Foddai, an orthopedic surgeon, evaluated Claimant on August 19, 2004. R. at 200. Dr. Foddai noted that there were no fractures or dislocations in the magnetic resonance imaging ("MRI") scan, but there was evidence of degenerative disc disease at L4-L5, and a bulge present at L4-L5 with a right paracentral disc herniation. R. at 201. Dr. Foddai also found evidence of facet hypertrophy with evidence of canal stenosis at L4-L5. R. at 201. Dr. Foddai reported that the claimant complained of pain in the lower back radiating into the entire right lower extremity with paresthesias and numbness. R. at 201. Dr. Foddai was of the opinion that the claimant had no focal motor weakness. R. at 201. However, Dr. Foddai found that there was a disc herniation present and that the claimant does have some pain radiating into the right lower

extremity into the thigh, calf, and foot.  R. at 201.  He further noted that the claimant's symptoms have significantly worsened over history and concurred with Dr. Lester that such evidence is consistent with a degree of embellishment.  R. at 202.  Dr. Foddai thought the claimant would benefit from a neurological evaluation with electrodiagnostic studies to determine whether there was radiculopathy and if there was any permanency.  R. at 202.  Dr. Foddai also concurred with Dr. Lester that the claimant would be able to perform sedentary duty.  R. at 202.

Dr. James A. Charles, a neurologist, evaluated the claimant on August 26, 2004.  R. at 205-10.  Plaintiff was complaining that since the epidural injection, there was pain radiating into the right lower limb with numbness, tingling, and weakness, and that her symptoms worsened rather than improved.  R. at 209.  Dr. Charles was of the opinion that the claimant undoubtedly sustained a lower back sprain and that there was no disc herniation, but instead, there was a bulge at L4-L5.  R. at 210.  He did not think the pain in the lower right limb was in a neuroanatomic distribution, and noted evidence of exaggeration.  R. at 210.  Dr. Charles found a full cervical range of motion and found that in the recumbent position, the right straight leg raising maneuver elicited pain at approximately 5 degrees.  R. at 210.  Claimant's gait and station was antalgic.  R. at 210.  Dr. Charles performed electromyography and nerve conduction studies which were normal.  R. at 206, 211.  Dr. Charles found the claimant to have severe functional overlay, and thought a subarachnoid injection rather than an epidural injection was possible with an arachnoiditis.  R. at 206.

Claimant then went to see Dr. Peter S. Vidaver on October 6, 2004.  R. at 211.  Dr. Vidaver noted exaggerated pain behaviors while sitting, and further pain behaviors when the claimant was asked to stand.  R. at 211.  The claimant showed minimal range of motion of the

lower back in any direction, which Dr. Vidaver also found consistent with exaggerated pain behaviors.  R. at 211.  There were no palpable muscle spasms, no trigger points that could be palpated in the lower back, and no allodynia.  R. at 211.  Deep tendon reflexes were intact in both lower extremities, and the claimant had a normal sensory examination throughout the lower extremities.  R. at 211.  Dr. Vidaver concurred with Dr. Charles that the physical examination showed no objective signs of disease.  R. at 211.  He also believed the claimant reached the point of maximum medical benefit and would not be likely to respond to further treatment.  R. at 212.

Dr. Salvatore J. Lapilusa saw Claimant on October 18, 2004.  R. at 214.  Dr. Lapilusa reported that pain radiated down the claimant's right leg, but all reflexes were normal and there was no motor or sensory loss.  R. at 214.  Dr. Lapilusa saw Plaintiff again on November 1, 2004, and noted that the patient had no relief, and should consult with a spine surgeon for further treatment or possible surgery.  R. at 214.

On November 16, 2004, Dr. Alan Friedman saw Claimant for an orthopedic evaluation.  R. at 216.  At that time, Plaintiff was taking Ibuprofen, Cyclobenzaprine, and Trazodone.  R. at 217.  Dr. Friedman's notes state that pin prick was decreased in the right L4-L5 and lower extremities.  R. at 217.  Claimant was able to transfer a pin from the table, pick it up, transfer it from one hand to the other, and can oppose the thumb to all fingers.  R. at 217.  The straight leg raising was negative bilaterally, but the claimant had severe pain in her lower back described at pulling starting at about 45 degrees.  R. at 217.  Due to Claimant's shifting positions, Dr. Friedman was unable to evaluate a full range of motion in the right hip.  R. at 217.  Nonetheless, the left hip, both upper extremities, knees, ankles, neck, and lumbar spine all had a full range of motion.  R. at 217.  The joints were without erythema, effusion, swelling, dislocation or

deformities, and there was no muscle atrophy.  R. at 217.  Dr. Friedman noted possible L4-L5

and/or S1 radiculopathy on the right, and indicated that the lumbosacral spine findings and

history were suggestive of chronic yet severe lumbar strain.  R. at 217.

     Claimant also saw Dr. Bipin Parikh.  R. at 344.  Dr. Parikh referred the claimant to Dr.

Jean Byk for a diagnostic imaging examination.  R. at 221.  The results showed: straightening of

the normal lumbar lordosis which may have been secondary to muscle spasm; upright

posteroanterior and lateral chest radiographies; osteoarthritis of the hips, left greater than right;

and in the lubmar spine, facet anthropathy of L5-S1, narrowing of the L4-L5 and L5-S1

intervertebral disc spaces, and spondylosis.  R. at 221-22.

     The State agency doctor, Dr. Stuart From examined evidence in the record on January 21,

2005.  R. at 236-43.  Dr. From's notes reveal full lumbar range of motion, full strength in lower

extremities, and decreased pinprick sensation in L4-L5 and S1 dermatomes.  R. at 241.  The

claimant's gait was normal, and she could walk on both heals and toes.  R. at 241.  Due to back

pain, Claimant was unable to squat.  R. at 241.  Upon assessing the evidence in the record, Dr.

From determined the claimant could occasionally lift 20 pounds, frequently lift 10 pounds, stand

and/or walk about 6 hours in an 8-hour workday, sit for the same amount of time, and pushing

and/or pulling was unlimited other than as shown for lifting and/or carrying.  R. at 237.  Dr.

From also pointed out that the claimant was able to perform personal care, drive and use public

transportation, grocery shop, prepare meals, and perform household maintenance with assistance.

R. at 237-38.

     On April 6, 2005, Claimant saw Dr. Robert Heary.  R. at 428.  Dr. Heary noted that the

plaintiff complained of pain with flexation/extension of the lumbar spine.  R. at 433.  The

claimant also had severe pain with light palpation over the lumbar spine.  R. at 433.  Dr. Heary indicated that surgery intervention would not decrease the claimant's pain, and recommended spinal epidural steroid injections, exercise, and weight loss.  R. at 433.  Dr. Heary referred the claimant to Dr. Peter P. Yonclas.  R. at 430.

Claimant saw Dr. Yonclas on July 11, 2005.  R. at 431.  Dr. Yonclas was of the opinion that the claimant had significant magnification, and that full, accurate testing and examination was difficult.  R. at 431.  Dr. Yonclas also indicated that the claimant had a significantly restricted range of motion.  R. at 431.  Dr. Yonclas suggested the claimant discontinue taking Hydrocodone and Ibuprofin, and prescribed Tramadol and Naprosyn.  R. at 431.  Additionally, Dr. Yonclas recommended physical therapy three times per week for four weeks.  R. at 431.  Dr. Yonclas saw the claimant again on February 6, 2006.  R. at 429.  According to Dr. Yonclas, Claimant started the recommended physical therapy, but did not complete the therapy due to insurance issues.  R. at 429.  Additionally, due to insurance issues, Claimant did not fill the Tramadol or Naprosyn that were proscribed.  R. at 429.  Instead, Claimant continued taking the medications proscribed by her primary care physician: Alprazolam, Hydrocodone, and Ibuprofin. R. at 429.

Claimant was also treated in the emergency room at Jersey City Medical Center on January 17, 2005, October 11, 2005, December 31, 2005, and March 31, 3006.  R. at 342-381. At the time of the hearing, Claimant was taking Coreg, Diovan, Amlodipin Besylate, Hydrocodone, Corisoprodol, Ibuprofen, Vitaplex Plus, and Nortriptyline Hcl.  R. at 482.

## III.   LEGAL STANDARD

### A.  Determining Disability

Pursuant to the Social Security Act ("Act"), a claimant must show a disability based on an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can expect to last, for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To qualify as disabling, the impairment must be of such severity that the person is unable to do previous work, and, in light of age, education, and experience, the individual cannot engage in any other substantial gainful activity existing in the national economy. Id. at § 1382c(a)(3)(B). "Medically-acceptable clinical and laboratory diagnostic techniques" must be shown in order to prove the existence of a disability. Id. at §§ 423(d)(3); 1382c(a)(3)(D).

The Commissioner of Social Security ("Commissioner") promulgated a five-step sequential process to determine whether an applicant is disabled under the Act. 20 C.F.R. § 404.1520. At any step, if a decision is made that the claimant is not disabled, the evaluation terminates, and the claimant will not be entitled to DIB. 20 C.F.R. §§ 404.1520(a), 416.920(a). The plaintiff bears the burden of proof under steps one, two, and four. Bowen v. Yuckett, 482 U.S. 137, 146 n.5 (1986). Neither party bears the burden at step three. Id. If the claimant meets the first four steps, the claimant has made out a prima facie case, and the burden shifts to the Commissioner at step five. Id.

At step one, the Commissioner determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity must be both substantial and gainful work activity. Id. at § 404.1527. Substantial work activity is "work activity that involves doing significant physical or mental activity." Id. at § 404.1572(a). Gainful work activity is work that is compensated, or done for-profit. Id. at § 404.1572(b). If the

claimant is currently engaged in such activity, the claimant is not disabled under the Act, and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the determination proceeds.

At step two, the claimant must demonstrate that there is a severe, or a combination of severe, medically determinable physical or mental impairments(s). Id. at § 404.1520(a)(4)(ii). An impairment qualifies as severe if it significantly limits the claimant's "physical or mental ability to do basic work activities." Id. at § 404.1521(a). If the claimant is able to establish a severe impairment, the sequential process continues.

At step three, the Commissioner compares the combined effect of the severe impairment(s) and determines whether the claimant's impairment(s) matches or is equal to one of the listings in the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at § 404.1520(a)(4)(iii). In order for a claimant to meet a listing, the impairment, or combination of impairments, "must meet *all* of the specified medical criteria. . . . An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original). If it is determined that the claimant suffers a listed impairment or its equivalent, the claimant is conclusively presumed to be disabled. Id. If not, the Commissioner proceeds to step four.

At step four, the Commissioner determines the claimant's RFC and ability to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The Commissioner considers all medically determinable impairments, including impairments that are not severe. Id. at § 404.1545(a)(2). Past relevant work is work that the claimant has done "within the past 15 years, that was substantial gainful activity," and that has lasted long enough for the claimant to have learned how

to do the job.  Id. at § 404.1560(a)(1).  If the claimant can perform past relevant work, the claimant is not disabled.  If not, the claimant has met his burden of proof and the burden shifts to the Commissioner at step five.

At step five, the Commissioner must show that the claimant's RFC (determined at step four) allows the claimant to perform other work that exists in significant numbers in the national economy.  Id. at §§ 404.1520(a)(4)(v); 404.1545(a)(2); 404.1560(c)(2).  The Commissioner must make this determination in light of the claimants vocational factors (age, education, and work experience).  Id. at § 404.1520(a)(4)(v).  The Commissioner must consider whether the impairments affect exertional or non-exertional demands of the job.  Exertional impairments affect the claimant's "ability to meet strength demands of the job" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at § 404.1569(a).  All remaining impairments are non-exertional.  Non-exertional impairments include: pain; difficulty functioning due to nervousness, anxiety or depression; inability to concentrate or remember; difficulty seeing or hearing; or difficulty tolerating physical features of the work environment such as dust or fumes.  Id. at § 404.1569(c)(1)(i)-(iv).

If the impairment is primarily exertional, and no significant non-exertional impairments exist, the Commissioner is permitted to use medical-vocational guidelines ("grids").  Green v. Schweiker, 740 F.2d 1066, 1067 (3d Cir. 1984).  The grids take into account vocational factors and RFC in terms of "very heavy," "heavy," "medium," "light," or "sedentary" exertion, and yield a decision of either disabled or not disabled.  See 20 C.F.R. § 404, Subpart P, Appendix 2. Nonetheless, if there are significant non-exertional impairments, grids alone are not sufficient to satisfy the Commissioner's burden because they only consider jobs for claimants with exertional

impairments that fit the criteria at various levels.  Sykes v. Apfel, 229 F.3d 259, 269 (3d Cir. 2000); see also 20 C.F.R. § 404.1569(d).  In that case, the Commissioner must use "a vocational expert, or other similar evidence, such as a learned treatise" to determine whether the claimant can perform other work.  Sykes, 339 F.3d at 273.  If the Commissioner is able to present evidence that establishes other available work, the claimant is not disabled.

### B.  Standard of Review

This Court has jurisdiction to review the Commissioner's findings pursuant to 42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, the findings are conclusive.  Richardson v. Perales, 402 U.S. 389, 390 (1971); see also 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (citing Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  The court must review the entire record when determining whether the ALJ's findings are supported by substantial evidence.  Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003); see also Smith v. Califano, 637 F.2d 986, 970 (3d Cir. 1981).  The court must give deference to the administrative findings and may not "weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182; see also Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).

Evidence is not substantial if it either constitutes a mere conclusion or is overwhelmed by other evidence.  Brewster v. Heckler, 786 F.2d 581, 581 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  Moreover, "[a] single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence."  Kent, 710 F.2d at 114.  In making this determination, the reviewing

court must take into account: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, education, background, and work history." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

## IV.    DISCUSSION

### A.  Summary of the ALJ's Findings

At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since the alleged onset date, March 11, 2004. R. at 18. At step two, the ALJ found that the claimant had the following severe impairments: low back disorder and mild asthma. R. at 18. At step three, the ALJ found that the combination of Claimant's impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 18. Specifically, the ALJ found that claimant's symptoms did not meet or equal the criteria under 1.00. R. at 18.

At step four, the ALJ determined that Plaintiff had the RFC to perform a full range of sedentary work. R. at 19. In order to reach this conclusion, the ALJ first determined whether Claimant's symptom's could be reasonably produced by an impairment that could be shown by medically acceptable clinical and laboratory diagnostic techniques. R. at 19. Here, the ALJ found that Plaintiff's medically determinable impairment could reasonably produce the alleged symptoms. R. at 20. Next, the ALJ evaluated the intensity, persistency, and limiting effects of Claimant's symptoms in order to assess how they limit the plaintiff's ability to perform basic work activities. R. at 19. The ALJ stated that he used all symptoms, including those not sustained by objective medical evidence. R. at 19. For those symptoms not substantiated by

objective medical evidence, the ALJ made a finding on the claimant's credibility based on the entire record.  R. at 19.  Here, the ALJ found that Claimant's statements concerning intensity, persistence, and limiting effects were not entirely credible.  R. at 20.

At step five, prior to August 13, 2006, the ALJ determined the claimant was not disabled, and was able to perform sedentary work in light of her age, education, and work experience in conjunction with the grids.  R. at 21.  As the ALJ determined the grids directly supported a finding of not disabled, the transferability of job skills was not material to the ALJ's determination.  R. at 21.  On August 13, 2006, Claimant's fiftieth birthday, Claimant's age category changed to closely approaching advanced.  R. at 21.  Thereafter, in light of the vocational factors, the ALJ found that the claimant has not been able to transfer any job skills to other occupations, and there were not a significant number of jobs in the national economy that claimant would be able to perform.  R. at 21.  Thus, the ALJ determined that the claimant became disabled beginning on August 13, 2006.  R. at 21.

**B.  Analysis**

The claimant contends that the ALJ erred in three respects.  First, Plaintiff claims her combined impairments met or equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Second, the claimant argues that the ALJ did not properly consider her subjective complaints at step four with regard to pain evaluation, and therefore the RFC determination was not based on substantial evidence.  Third, Plaintiff argues that the ALJ did not properly explain its decision that Plaintiff can perform sedentary work before August 13, 2006.

*1. Step Three- Listed Impairments*

The first issue before the Court is whether the ALJ properly determined that the claimant

does not meet or equal a listed impairment.  Specifically, the plaintiff claims that listing 1.04A

for disorders of the spine has been met since the claimant's alleged date onset of disability.[2]  The

ALJ is required to set forth the reason for his decisions.  Burnett v. Commissioner of SSA, 220

F.3d 112, 119 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981)).[3]

Bare conclusions can render the ALJ's opinion "beyond meaningful judicial review."  Id.  The

ALJ must analyze all evidence and sufficiently explain the weight given to probative evidence.

Cotter, 642 F.2d at 705.  Otherwise, "to say that his decision is supported by substantial evidence

approaches an abdication of the court's duty to scrutinize the record as a whole to determine

whether the conclusions reached are rational."  Id. (quotations omitted).

Here, the ALJ's determination at step three states that "review of the medical evidence

must be considered under the 1.00 criteria of the medical listings," and that "at no time does a

medical source report signs and/or findings establishing that the claimant's impairments are of a

severity to meet or equal the criteria of that listing."  The ALJ, however, does not give set forth

the reasons why the claimant does not meet a listed impairment.  Additionally, as the plaintiff

notes, the ALJ found that Plaintiff suffers asthma as a severe impairment, but fails to discuss

asthma any further in the decision.  R. at 18.  Further, the 1.00 criteria refers to all

---

[2]Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associate muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  20 C.F.R. Part 404 Subpart P, Appendix 1.

[3]Burnett also pointed out that the Tenth Circuit set aside an ALJ's determination where the ALJ only summarily concluded that the impairments did not meet or equal a listed impairment, but did not identify the relevant listed impairments, discuss specific evidence, or explain reasoning supporting his conclusion.  Burnett, 220 F.3d at 119; see Clifton v. Chater, 79 F.3d 1008 (10th Cir. 1996).

musculoskeletal system impairments.  ALJ Faukner, before remand, determined that the claimant did not meet listing 1.04.  R. at 439.  Here, however, ALJ Farley does not specifically mention listing 1.04, and does not explain why the listing was not met.  Although the ALJ does not need to cite specific listings at step three, the ALJ's record must permit meaningful review of the step three conclusions.  Lopez v. Comm'r of Soc. Sec., 270 Fed. Appx. 119, 121 (3d Cir. N.J. 2008).

In this case, it is not clear what listings the ALJ considered or what evidence the ALJ took into account as his discussion of listed impairments does not refer to any specific listing or medical evidence.  R. at 18.  Even considering the opinion as a whole, the ALJ only makes short references to the opinions of Dr. Charles, Dr. Lester, and Dr. Foddai, but fails to mention the numerous other doctors who treated the claimant.  R. at 20.  The only medical evidence cited refers to the step four assessment of Claimant's credibility.  R. at 20.  Moreover, Fargnoli cautions against relying on medical records found in a district court's own independent analysis not mentioned by the ALJ.  Fargnoli v. Halter, 247 F.3d 34, 44 (3d Cir. Pa. 2001).  Because there is no way to evaluate the ALJ's ruling, this case must be vacated and remanded.  On remand, the ALJ must reopen and fully develop the record and explain his findings at step three before rendering a ruling.

*2. Determination of Plaintiff's Credibility at Step Four*

The next issue is whether the ALJ properly evaluated the claimant's credibility as to the severity of her symptoms at step four.  When assessing the claimant's credibility, in addition to objective medical evidence, the ALJ must consider factors including: medical reports; the claimant's daily activities; the intensity, duration, location, and frequency of the symptoms; the type and side effects of any medications; treatments that have been used to alleviate the

symptoms; and any other measures the claimant uses or has used to relieve pain.  20 C.F.R. §
404.1529(c).

According to SSR 96-7p, the ALJ is required to consider the entire record and give
specific reasons for the weight given to the claimant's statements.  Williams v. Barnhart, 211
Fed. Appx. 101, 104 (3d Cir. 2006).  Additionally, "the 'determination . . . *must contain specific
reasons for the finding on credibility*, supported by the evidence in the case record, and must be
sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator
gave to the individual's statement and the reasons for the weight.'" Id. (quoting SSR 96-7p
(emphasis added)).   The ALJ must indicate which evidence has been rejected and which
evidence the ALJ relied on as the basis for his conclusion.  Schaudeck v. Commissioner of SSA,
181 F.3d 419, 433 (3d Cir. 1999) (citing Cotter, 642 F.2d at 705-06).  If not, a reviewing court
has no basis "on which to assess whether 'significant probative evidence was not credited or
[was] simply ignored.'"  Id. (quoting Cotter, 642 F.2d at 705).  In addition, when a claimant "has
worked for a long period of time," the claimant's testimony about their "work capabilities should
be accorded substantial credibility."  Taybron v. Harris, 667 F.2d 412, 415 (3d Cir. 1981);
Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979) (the claimant worked twenty-nine years
continuously, and fifteen years with the same employer).

Here, the ALJ noted that Claimant alleged an inability to walk for long periods because
her legs give out, and described pain down radiating down her right leg causing numbness.  R. at
20, 495.  Further, Claimant alleged inability to bend and/or lift, sit for long periods of time, or
carry bags.  R. at 20.  Additionally, the plaintiff claimed to have difficulty ambulating and states
that she has fallen.  R. at 20.  The ALJ also indicated that the claimant relies on family for

assistance in daily activities.  R. at 20.  However, after considering the entire record, the ALJ

found that although the impairment could reasonably be expected to produce the alleged

symptoms, Plaintiff's statements concerning persistence, intensity, and limiting effects of the

symptoms were not entirely credible.  R. at 20.

The ALJ first gave weight to Dr. Charles, who reported that there was no disc herniation,

but there was a bulge at L4-L5.  R. at 20.  Additionally, the ALJ noted that although Dr. Charles

reported that Plaintiff sustained a lower back sprain, Dr. Charles explained that the pain in the

lower limb does not seem to be in a neuranatomic distribution.  R. at 20.  Further, Dr. Charles

suspected exaggeration.  R. at 20.  The ALJ also mentioned Dr. Lester's report, which indicated

that the claimant had a right-sided bulge or protrusion at L4-L5 and some degenerative

spondylosis.  R. at 20.  Finally, the ALJ cited Dr. Foddai, who recommended a neurological

evaluation with electrodiagnostic studies to determine whether radiculopathy was present and if

there was any permanency.  R. at 20.  Nonetheless, Dr. Foddai determined the claimant was

capable of performing at least sedentary duty.  R. at 20.

Here, although the ALJ noted that Dr. Charles suspected exaggeration and Dr. Foddai

thought that the claimant was able to do sedentary work, most of the medical evidence and

opinions were completely absent from the ALJ's opinion.  Further, although reciting the standard

for what the ALJ is required to assess, the ALJ made no further mention of any of the factors or

how they played into his analysis.  The ALJ only made mention of the plaintiff's complaints, and

then concluded that he found the statements not entirely credible after considering the entire

record.  However, it is not clear what parts of the record the ALJ considered, other than the few

portions of the medical records noted above.  Additionally, Claimant worked for fifteen years for

the same employer before being injured on the job, and no mention has been made of the weight given to Claimant's statements or why they were rejected, despite her consistent work history.

The ALJ gave almost no analysis of Claimant's daily activities other than the brief mention that she uses family assistance for daily activities. Moreover, the ALJ did not discuss explain the intensity, duration, location, and frequency of the symptoms, other than to briefly mention Claimant's own statements of pain. The ALJ also did not mention any of Claimant's medications or treatments that have been attempted to alleviate pain or symptoms. Without any indication of what evidence the ALJ rejected or relied on, there is no way to evaluate the ALJ's ruling. Thus, this case must be vacated and remanded. On remand the ALJ is required to reopen the case and fully develop the record, and give a proper pain evaluation if it is necessary to reach step four.

*3. Determination of Sedentary Work Before Plaintiff's Age Category Changed*

The final issue is whether the ALJ properly determined that the plaintiff could perform sedentary work before her fiftieth birthday. Sedentary work requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Additionally, "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties." Id. If walking and standing are occasionally required, and other sedentary criteria are met, then a job is sedentary. Id. As mentioned above, the ALJ's finding "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based so that a reviewing court may know the basis for the decision." Cotter, 642 F.3d at 705. A reviewing

court "cannot exercise [its] duty of review unless [it is] advised of the considerations underlying the action under review." Id. (citing SEC v. Chenery Corp., 318 U.S. 80, 94 (1943)). The regulations state that in assessing RFC, the ALJ will make the assessment "based on all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(1). Additionally, the regulations note that "ability to meet the physical, mental, sensory, and other requirements of work" will also be considered in the RFC assessment. 20 C.F.R. § 404.1545(a)(4). Moreover, in assessing physical abilities, the adjudicator must "assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work on a regular and continuing basis."

Here, the ALJ determined that the claimant could perform sedentary work "considering the claimant's age, education, and work experience." R. at 21. Nonetheless, other than the brief mention of Dr. Foddai's assessment that the claimant could perform sedentary work, and that the undersigned concurred, the ALJ's opinion is devoid of any other analysis tending to show the claimant is able to perform sedentary work. There is no mention in the ALJ's opinion of medical evidence showing the claimant is able to perform the requisite duties for sedentary work. The ALJ merely mentioned that the claimant was considered a younger individual before her fiftieth birthday, she had a high school education, and worked as a nurses' aid, but did not address any of the claimant's physical capabilities to perform the work, or the nature and extent of the claimant's physical limitations. R. at 20-21. Accordingly, this finding must be vacated, and on remand, there must be an full development of the record and an explanation of the RFC determination.

Additionally, the plaintiff argues that the ALJ was incorrect in mechanically applying the

age categories when considering age as a vocational factor pursuant to 20 C.F.R. § 404.1563(a). In a borderline situation, the ALJ must not "apply the age categories mechanically." 20 C.F.R. § 404.1563(b). If the claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or a decision that [the claimant is] disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." Id.

Here, the ALJ determined the claimant was considered a younger individual before turning fifty, and was not disabled. R. at 20-21. Nonetheless, upon attaining the age of fifty, the ALJ determined the claimant's "age category changed to an individual closely approaching advanced age" and thus became disabled. R. at 20-21. The ALJ did not address whether the use of a higher age category was appropriate at any time before the claimant reached her fiftieth birthday, although the result of the change rendered Claimant disabled. Thus, on remand, the ALJ must discuss whether the use of a higher age category would be appropriate at any point before the claimant turned fifty.

## V.    CONCLUSION

For the foregoing reasons, the ALJ's decision will be VACATED, and the case REMANDED to the Commissioner for additional proceedings consistent with this opinion. On remand, the ALJ shall fully develop the record and explain his findings at step three. If it is necessary to reach step four, the ALJ must fully develop the record and explain his findings, making specific findings as to all pertinent medical evidence. Further, if rejecting particular evidence, the ALJ must explain why, and must address non-medical evidence. An appropriate

order accompanies this opinion.

DATED: March 30, 2011

/s/ Jose L. Linares

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE